# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | Case No. 1:08CR00008 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **TERRANCE ORLANDO CHATMAN, JR.,** ) | JUDGE JAMES P. JONES |
| ) | |
| ) | |
| Defendant. ) | |

*Whitney D. Pierce, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy Dickenson-Vicars, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Following the defendant's supervised release revocation hearing, the government advised the defendant and the court that the government's principal witness at the hearing, an officer with the Bluefield, West Virginia, Police Department, had recalled another "disciplinary incident" that had occurred during his employment with the department. Notice 1, ECF No. 95. Base on that report and defense counsel's research that had discovered a closed civil action in which the officer had been accused of using excessive force, the defendant contends that the revocation judgment should be set aside. For the reasons stated in this Opinion and Order, I will deny the defendant's motion.

The defendant, Terrance Orlando Chapman, Jr., was originally sentenced by this court in 2008 after his guilty plea to drug distribution crimes to 120 months' imprisonment, to be followed by eight years of supervision. Prior to the present proceeding, his supervision was revoked on two prior occasions, the most recent in 2018, when he was sentenced to six months' imprisonment, to be followed by three years of supervision.

On May 16, 2022, a probation officer of this court filed a Supervised Release Violation Report that charged the defendant with violation of his conditions of supervision by (1) failing a drug screen for use of marijuana; (2) possessing and selling heroin; and (3) possessing in his residence multiple firearms along with ammunition. Report 2–3, ECF No. 84. A hearing on this Report was held on May 26, 2022. At the hearing, the probation officer testified that Chatman had admitted to the use of marijuana on one occasion. Tr. 10, ECF No. 103. The officer also related that while Chatman had a job that paid only $7.25 per hour plus tips, he appeared to have expensive possessions, including "stacks" of Nike Air Jordan shoes, costing several hundred dollars for each pair, and three pairs of jeans, with price tags showing that they had cost over a hundred dollars each. *Id.* at 11–12. He also drove a used Range Rover. The probation officer testified that upon questioning, Chatman had stated that he had "female friends who liked to buy him things." *Id.* at 12.

The principal witness for the government was John Murray, a Bluefield police detective. He testified that he had worked as an officer for the Bluefield, West Virginia, Police Department from 2006 to 20015, and then from 2017 to the present. During his two-year interlude from the department, he worked at a federal prison as a correctional officer. He was a member of the Southern West Virginia Drug and Violent Crime Task Force and was the investigating officer in a prosecution of Chatman in state court. He testified that at the time of the investigation, Chatman was living in an apartment in Bluefield and Murray had received complaints about the "amount of traffic to the residence." *Id.* at 17. For that reason, he conducted surveillance on the apartment and observed the volume of traffic. He then supervised a controlled purchase of drugs by cooperators from Chatman at the apartment and at another location. He also recorded telephone calls to Chatman made by cooperators. Thereafter he obtained a search warrant for the residence that was executed by other officers while Murray waited on the street in front of a driveway that led to the apartment. A few seconds after the search team entered the apartment, Chatman ran out of a back entrance in stocking feet and down the driveway, where Murray arrested him.

Detective Murray then conducted a search of the apartment and identified photographs taken by him of items seized, including a letter addressed to Chatman found in a drawer in the bedroom, firearms found in different rooms, including a

pistol and an AR-15 style rifle. He also found Chatman's wallet, with his driver's license and $1400 in cash. Three sets of digital scales were found in the kitchen with powder-like residue on one of the scales. In the refrigerator in the kitchen was found a bag containing what was later tested as methamphetamine, as well as a bag containing marijuana. Chatman was taken to the police station and after being read his rights, stated, "Why would I cooperate? I believed I'm f****d anyway." *Id.* at 55.

On cross-examination by Chatman's counsel, Murray was asked if he had ever been the subject of any disciplinary action either at the Bluefield Police Department or at the prison. He related that he had been placed on leave in 2007 or 2008 without pay and lost vacation days for failure to report that while intoxicated, he had been a passenger in a vehicle when the driver fired a pistol out the vehicle window into a closed business. *Id.* at 57–61.

The court found that the government had proved by a preponderance of the evidence that Chatman had violated conditions of his supervision as alleged and revoked his supervised release. Chatman was then sentenced by oral pronouncement and written judgment to 37 months' imprisonment, with no further supervision to follow. *Id.* at 123–24; J. 3, ECF No. 94 (May 26, 2022). The next day the government filed a Notice Regarding Testimony at Defendant's Revocation Hearing, ECF No. 95, in which it reported that Detective Murray had recalled that

he had been the subject of another disciplinary action by the Bluefield Police Department in which he had been suspended without pay for three days.

On June 9, 2022, 14 days after the hearing and judgment, the defendant filed a Motion for Stay of Judgment and to Set Aside Finding of Supervised Release Violation.  In the motion, the defendant contended that the newly disclosed second disciplinary action against Detective Murray, together with defense counsel's discovery of a lawsuit in the United States District Court for the Southern District of West Virginia alleging excessive force against Murray, are grounds for the court to "set aside" the court's revocation "finding."  Mot. 3, ECF No. 99.  The government responded, requesting leave to investigate the matter, which was granted.  Thereafter, the government provided copies of two letters from the Bluefield Chief of Police to Murray imposing discipline sanctions on him, one dated April 6, 2009, and the other dated March 28, 2012, corroborating the two incidents.  The government also reported that in connection with the federal lawsuit, the Chief of Police had advised that there was no departmental investigation of that incident, as it had been conducted by the West Virginia State Police.  The government further reported that the State Police had advised that records of any investigation did not exist, and that any such records would have been destroyed after 10 years.[1]

---

[1] Taking judicial notice of public records, *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009), I find that a civil lawsuit was filed against Murray and other Bluefield police officers on March 3, 2010, in the United States District Court for the

The defendant's motion stated no basis for the court's subject-matter jurisdiction to grant the relief requested.  It has been held that a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 is not available in revocation proceedings.  *United States v. Morris*, 42 F. App'x 285, 288 n.2 (10th Cir. 2002) (unpublished); *United States v. Yancey*, 100 F. Supp. 2d 378, 381 (E.D. Va. 2000); *see also United States v. Welch,* 160 F. Supp. 2d 830, 832–33 (N.D. Ohio 2001).  Accordingly, I directed the defendant to show cause why the motion should be denied without prejudice for lack of subject-matter jurisdiction.  The defendant has responded, arguing that the court may consider the motion by relying on the Federal Rules of Civil Procedure, and in particular Rules 59(e) (motion to alter or amend judgment) and 60(b) (relief from judgment based on newly discovered evidence).  The government has not replied.

Although the criminal statutes and rules do not contain a provision allowing motions to reconsider in general, some courts have recognized such motions.  *See United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir. 2011) (permitting district court to entertain motion to reconsider its denial of motion to reduce sentence under 18 U.S.C. § 3582(c)).  Nevertheless, reconsideration of sentencing judgments have been strictly restrained.  As the Fourth Circuit has noted:

---

Southern District of West Virginia alleging that they had used excessive force in arresting the plaintiff. *Thomas v. City of Bluefield, W. Va.*, No. 1:10-00227, ECF No. 1.  The action was dismissed pursuant to settlement on August 16, 2011. *Id.,* Order, ECF No. 64.

> The law closely guards the finality of criminal sentences against judicial "change of heart." *United States v. Layman,* 116 F.3d 105, 109 (4th Cir.1997); *see also, e.g., Johnson v. United States,* 544 U.S. 295, 309, 125 S. Ct. 1571, 161 L.Ed.2d 542 (2005) ("[T]he United States has an interest in the finality of sentences imposed by its own courts."); *United States v. Fields,* 552 F.3d 401, 405 (4th Cir. 2009) ("Congress limited the reach of [Federal Rule of Criminal Procedure 35, which governs sentence modification,] because it wanted to promote openness and finality in sentencing."); *United States v. Caraballo,* 552 F.3d 6, 9 (1st Cir. 2008) ( "Finality is an important attribute of judgments and, typically, once a pronounced sentence in a criminal case becomes final and unappealable, it may not be modified."); *United States v. Abreu-Cabrera,* 64 F.3d 67, 73 (2d Cir. 1995) ("As a result of Congress' desire to provide finality to sentencing, . . . [the district court may not act upon] second thoughts [regarding the severity of a defendant's sentence], no matter how well intentioned.").

*United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (reversing district court's reduction of sentence upon a motion for reconsideration).

Based on this authority and my recognition of the court's limited power to reconsider criminal judgments, I find that on the present motion the court does not have jurisdiction to reconsider the judgment entered in this case.[2]  Accordingly, it is **ORDERED** that the Motion for Stay of Judgment and to Set Aside Finding of Supervised Release Violation, ECF No. 99, is DENIED.

---

[2]  Jurisdiction would exist on an authorized procedure, such as a motion under 28 U.S.C. § 2255 (permitting motion to vacate or set aside sentence where it was imposed in violation of the Constitution or laws of the United States).  I suggest no opinion as to whether the present facts would support such a motion.

ENTER: August 16, 2022

/s/  JAMES P. JONES
Senior United States District Judge